In re IONOSPHERE CLUBS, INC., Eastern Air Lines, Inc., and Bar Harbor Airways, Inc., d/b/a Eastern Express, Debtors.

Martin R. SHUGRUE, Jr., as Trustee
of the Estate of Eastern Air
Lines, Inc., Plaintiffs,

v.

Dennis FISCHER, Acting Administrator General Services Administration and General Services Administration, Defendants.

Bankruptcy Nos. 89 B 10448 (BRL), 89 B 10449 (BRL) and 89 B 10287 (BRL). Adv. No. 93–9154A.

United States Bankruptcy Court,
S.D. New York.

Feb. 18, 1994.

King & Spalding by Daniel King, New York City, for Martin R. Shugrue, Jr., Trustee for the Estate of Eastern Air Lines, Inc.

U.S. Dept. of Justice by Manvin S. Mayell, New York City, for U.S.

*ABSTRACT FROM BENCH RULING ON TRUSTEE'S MOTION FOR SUMMARY JUDGMENT AND GOVERNMENT'S MOTION FOR SUMMARY JUDGMENT*

BURTON R. LIFLAND, Chief Judge.

The United States of America, on behalf of the General Services Administration (the "GSA") and various other governmental agencies (collectively the "Government"), moves for relief from the automatic stay to set off funds owed by the Government to Eastern Air Lines ("Eastern" or the "Debtor") for prepetition transactions against prepetition claims against Eastern held by the Government. Martin R. Shugrue Jr., the chapter 11 trustee of the Eastern estate (the "Trustee"), moves for summary judgment in opposition to the Government's motion and in support of a ruling that (1) the Government cannot apply the $7,691,587.50 currently deposited with the Registry of this Court (the "Alaska Airlines Fund") to set off Amounts owed by Eastern to Government agencies or departments and (2) the Government may not apply the $2,164,963.54 (the "GSA Payable") to offset amounts allegedly owed by Eastern to the GSA or any other governmental agency or department.

By way of background, as a result of rulings by the Comptroller General and the United States District Court for the District of Columbia, and pursuant to an order of the United States Court of Appeals for the Federal Circuit, the Government deposited the Alaska Airlines Fund with the Registry of this Court in May 1993. In June 1993, the Government filed a motion seeking relief from the automatic stay to set off the Alaska Airlines Fund and the GSA Payable against claims of the GSA and a number of other governmental agencies and departments. The Trustee filed this adversary proceeding seeking (1) the return of the Alaska Airlines Fund; (2) turnover of the GSA Payable; and (3) a declaratory judgment that the GSA is not entitled to a recovery of $4,047,733.13 in alleged overcharges (the "Alaska Airlines–Like Overcharges") sought in the GSA's Amended Proof of Claim. Shortly thereafter the Trustee filed the within motion for summary judgment.

The parties now agree that the Government is not entitled to recovery of the Alaska Airlines–Like Overcharges, therefore the Trustee's third claim for relief is moot. The issue which remains is whether the Government may apply the Alaska Airlines Fund or the GSA Payable to offset amounts owed by Eastern to the GSA or other governmental departments or agencies.

Fed.R.Civ.P. 56, applicable in bankruptcy pursuant to Fed.R.Bankr.P. 7056, provides

that summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) (quotations omitted). Where the movant demonstrates the lack of any genuine issue of material fact, summary judgment is appropriate. *In re O.P.M. Leasing Servs., Inc.*, 46 B.R. 661, 665 (Bankr.S.D.N.Y.1985) (citing *Burtnieks v. City of New York*, 716 F.2d 982, 985 (2nd Cir.1983)). However, the court must deny summary judgment where disputes exist over facts that might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

In this instance, the parties' local Rule 13(h) statements, affidavits and other pleadings indicate there are no material facts in dispute. Summary judgment is therefore appropriate.

■ In general, the right to set off mutual prepetition debts owed to and by a creditor "has been confirmed in federal bankruptcy law since 1800." *Gribben v. United States (In re Gribben)*, 158 B.R. 920, 925 (S.D.N.Y. 1993) (citing *Bohack Corp. v. Borden, Inc.*, 599 F.2d 1160, 1164–65 (2d Cir.1979)). This right is governed by section 553(a) of the Bankruptcy Code which provides in pertinent part:

> [T]his title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case … against a claim of such creditor against the debtor that arose before the commencement of the case.

11 U.S.C. § 553(a). "Thus, section 553 does not create a right of setoff; the right exists, if at all, under applicable nonbankruptcy law." *In re Drexel Burnham Lambert Group Inc.*, 113 B.R. 830, 839 (Bankr. S.D.N.Y.1990). A creditor bears the burden of proving that it has the right of setoff in bankruptcy, *see First Nat'l Bank of Louisville v. Hurricane Elkhorn Coal Corp. II*, 763

F.2d 188, 190 (6th Cir.1985), and must establish the following three criteria:

1. The debtor must owe a debt to the creditor which arose prepetition;

2. The debtor must have a claim against the creditor which arose prepetition; and

3. The debt and claim must be mutual.

*Braniff Airways, Inc. v. Exxon Co., USA*, 814 F.2d 1030, 1034 (5th Cir.1987). Once these technical requirements of setoff are satisfied, "the bankruptcy judge must scrutinize the right of setoff in light of the Bankruptcy Code's goals and objectives. These goals include … equitable treatment of all creditors." *Illinois v. Lakeside Community Hosp., Inc. (In re Lakeside Community Hospital, Inc.)*, 151 B.R. 887, 890 (N.D.Ill.1993); *accord In re Elcona Homes Corp.*, 863 F.2d 483, 484 (7th Cir.1988).

## I. Setoff of the Alaska Airlines Fund

■ This Court holds that the Government may not apply the Alaska Airlines Fund to off set amounts owed by Eastern to the Government. As stated previously, section 553 codifies the established "right to set off mutual prepetition debts owed to and owed by a creditor." *Drexel*, 113 B.R. at 839. In this instance, although the Government attempts to categorize the Alaska Airlines Fund as a "debt" owed to the Debtor in connection with the Alaska Airlines litigation, the District Court and the Federal Circuit made it abundantly clear that this Fund belongs to the Debtors and thus is property of the estate. As stated by the District Court:

> Both the GAO and the Court have found that the Government arbitrarily and without justification has withheld from the Plaintiffs money clearly belonging to them. In essence, the Government improperly has taken Plaintiffs' property from them without any legal basis for doing so.

*Alaska Airlines v. Austin*, No. CIV. 90–2879, 1992 WL 464711, at *2 (D.D.C.1992). Referring to the District Court's decision, the Federal Circuit found:

> The court also declared that because GSA holds funds withheld illegally, funds rightfully belonging to the airlines, to provide

complete relief, and based on its conclusion that under the statute the government had no right to withhold money, that money had to be returned.

*Alaska Airlines, Inc. v. GSA,* 8 F.3d 791 (D.C.Cir.1993).

■ In short, the Alaska Airlines Fund is clearly *owned by,* as opposed to *owed to* Eastern. The Government has no right whatsoever to utilize this Fund, which was improperly withheld from Eastern, to offset its debts. The Government's motion to apply this Fund toward offset is hereby denied. Moreover, even if the Alaska Airlines Fund was a debt owed to the Debtor, the Government would not be entitled to set off because the requisite mutuality of debts between the Debtor and the Government does not exist.[1] In reaching this conclusion, the Court focuses its inquiry on whether each agency should be treated as a separate, individual creditor of the Debtor's estate, or whether the Government and all of its agencies, represented by the GSA in the present case, should be deemed a single creditor. The Government asserts that all government claims and obligations are mutual in relation to one another, regardless of whether they are incurred by different agencies within the government. The Debtor argues that each agency is an independent entity and therefore interagency setoff should not be permitted.

In general, there is a divergence of authority as to whether mutuality exists among governmental agencies for purposes of setoff. A number of courts have found that debts and claims incurred or generated by different governmental departments are mutual. *See United States ex rel. Small Business Admin. v. Rinehart,* 88 B.R. 1014 (D.S.D. 1988), *aff'd in part, rev'd in part,* 887 F.2d 165 (8th Cir.1989); *In re Britton,* 83 B.R. 914 (Bankr.E.D.N.C.1988); *In re Schons,* 54 B.R. 665 (Bankr.W.D.Wash.1985); *In re Sound Emporium, Inc.,* 48 B.R. 1 (Bankr.W.D.Tex. 1984), *aff'd,* 70 B.R. 22 (W.D.Tex.1987). However, these cases either contain no analysis of the issue or rely upon the Supreme Court case of *Cherry Cotton Mills, Inc. v. United States,* 327 U.S. 536, 66 S.Ct. 729, 90 L.Ed. 835 (1946).

In *Cherry,* the federal government was permitted to set off a tax refund owed to the petitioner under the Agricultural Adjustment Act against money that the petitioner owed the Reconstruction Finance Corporation on a note. Although that factual scenario is somewhat analogous to the case at bar, it is clearly distinguishable. As the court explained in *Lakeside,* 151 B.R. at 892:

In *Cherry,* no other creditors were. involved, merely a federally-created corporation. In this case, other unsecured creditors are involved. Second, the *Cherry* court itself limited its conclusions to the facts of that case or similar circumstances in nonbankruptcy cases.

The government in *Cherry* "sought neither immunity nor priority." *Cherry,* 327 U.S. at 540, 66 S.Ct. at 712. In contrast, here, the GSA seeks priority over Eastern's other unsecured creditors through the assertion of its setoff rights. This would clearly disrupt "the prime bankruptcy policy of equality of distribution among creditors." *Jarboe v. United States Small Business Admin. (In re Hancock),* 137 B.R. 835, 847 (Bankr. N.D.Okla.1992).

This finding is consistent with the statutory construction of section 553(a) of the Code. By its terms, section 553 permits setoff only by "a creditor" of a "mutual debt owing by such creditor to the debtor" against "a claim of such creditor against the debtor...." 11 U.S.C. § 553. A "creditor" is defined in section 101 of the Code as an "entity that has

---

1. The Trustee asserts the Government is bound by the decisions of the United States Bankruptcy Court for the District of Delaware in *In re Trans World Airlines, Inc.,* No. 92–115 (Bankr.D.Del. Sept. 30, 1993) and *In re Continental Airlines, Inc.,* Nos. 90–932 through 90–890 (Bankr.D.Del. Aug. 17, 1993) (the "Delaware Cases"), which held that the United States may not setoff debts and obligations of different agencies. However, pursuant to the Supreme Court decision *United States v. Mendoza,* 464 U.S. 154, 104 S.Ct. 568, 78 L.Ed.2d 379 (1984), offensive collateral estoppel does not apply to the Government. While it is not crystal clear that offensive collateral estoppel is invoked in this case, because Eastern was not a party in the Delaware cases, I will assume that offensive collateral estoppel would have precluded a review of this issue but for the fact that it is asserted against the Government.

a claim against the debtor." 11 U.S.C. § 101(10). An entity is defined § 101(15) to include a "governmental unit," and a "governmental unit" is in turn defined in section 101(27) of the Code as "United States; State; ... [or] department, agency, or instrumentality of the United States."

■ Given the fact that "[i]t is an ancient and sound rule of construction that each word in a statute, should if possible, be given effect," *Crandon v. United States*, 494 U.S. 152, 171, 110 S.Ct. 997, 1008, 108 L.Ed.2d 132 (1989) (Scalia, J., concurring), this Court finds the holding of *Lakeside* persuasive. "Congress intended that [governmental] units be treated as distinguishable and therefore not the same creditor within the provisions of the statute." *Id.*, 137 B.R. at 891. Therefore, one agency should not be able to set off the claims and debts of another.

In this instance, as pointed out by the Trustee, each of the departments and agencies for which the Government would like to employ setoff have distinct administrative structures. They each have separate budgets, staffs, and, most importantly, possess different rights, claims, privileges, powers and relationships with respect to Eastern. Moreover, the fact that each of the agencies filed its own proof of claim highlights the separateness of each of these agencies. Put another way, the governmental agencies and departments stand in different rights and capacities vis a vis Eastern.

■ Furthermore, this finding is entirely consistent with the underlying policy of the allowance of setoff in bankruptcy. In general, the Bankruptcy Code is oriented toward the prevention of preferential treatment of creditors. *See, e.g. Sampsell v. Imperial Paper & Color Corp.*, 313 U.S. 215, 219, 61 S.Ct. 904, 907, 85 L.Ed. 1293 (1941). A creditor which can set off an independent debt to a debtor may effectively receive full repayment and is therefore in a preferred position vis-a-vis other creditors who cannot set off their claims. A narrow interpretation of mutuality ensures that setoff is allowed only in situations in which the equitable considerations are strongest: namely where the claims or debts are owed between the same parties in the same right or capacity.

In light of the foregoing, this Court holds that the requisite mutuality of claims does not exist so as to afford the Government the right to set off the Alaska Airlines Fund against debts owed by the Debtor. This Fund, currently held with the Registry of the Court, must be turned over to the Debtor forthwith. The Government's motion for relief from the automatic stay to set off the Alaska Airlines Fund is hereby denied. The Trustee's motion requiring turnover of the Alaska Airlines Fund is hereby granted.

## II. Setoff of the GSA Payable

■ Having found that there is no mutuality between governmental agencies and departments, the Government may not utilize the GSA Payable incurred by numerous governmental agencies and departments to offset claims the Government has against Eastern. Moreover, even if mutuality did exist, the Government would not be entitled to set off because of its disregard for, and violation of, the automatic stay.

Section 362(a)(3) of the Code prohibits "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(2). It is the Government's contention that it never set off the GSA Payable against its claims, but that it simply withheld payments due to the Debtor. *See* Government's Memorandum at 12–13. The Government relies on a number of bank deposit cases to support its position that such an "administrative freeze" does not violate the automatic stay. However, as pointed out by the Court in *Drexel*, 113 B.R. 830 at 847, "the cases involving an administrative freeze in a non-bank deposit setting uniformly hold that the unilateral retention of a debtor's funds is violative of the automatic stay." *See Rinehart*, 887 F.2d 165 (8th Cir.1989); *United States v. Reynolds*, 764 F.2d 1004 (4th Cir.1985); *United States v. Norton*, 717 F.2d 767 (3rd Cir.1983).

■ In addition, the Government's actions have also violated the automatic stay provisions of § 362(a)(7) of the Code. Section 362(a)(7) explicitly prohibits "the setoff of any debt owing to the debtor that arose

before the commencement of the case under this title against any claim against the debtor." 11 U.S.C. § 362(a)(7).[2] In contravention of this section, the GSA filed a Proof of Claim in Eastern's bankruptcy which subtracted the GSA Payable from the amount allegedly owed by Eastern to the GSA and stated that the "net amount" owed to the United States was $1,524,844.96. Although the Government subsequently amended its proof of claim, this action clearly evidences a decision to exercise the right of setoff without obtaining relief from the automatic stay. Because a "bankruptcy court should deny a setoff to those creditors who violate the automatic stay," *Official Committee of Unsecured Creditors of Operation Open City, Inc. v. New York Dept. of State (In re Operation Open City, Inc.)*, 148 B.R. 184, 194 (quoting *Blava In–Line, Inc. v. Midlantic Nat'l Bank/ North (In re Blava In–Line, Inc.)*, 133 B.R. 33, 36 (Bankr.S.D.N.Y.1991) (citing *MNC Commercial Corp. v. Joseph T. Ryerson & Son, Inc.*, 882 F.2d 615, 618 (2d Cir.1989))), it is appropriate to deny the Government's motion to lift the automatic stay to permit setoff of the GSA Payable. In light of the foregoing, the Government must now turnover the GSA Payable to the Debtor pursuant to § 542(a) of the Code.

Submit an order consistent with the foregoing.

---

**2.** In general, the determination of whether a setoff has occurred in bankruptcy proceedings is a matter of state law. *United States v. Reynolds*, 764 F.2d at 1006–07. Because Eastern is a Florida corporation, Florida law should apply. *Id.* at 1007 (because debtors were residents of Virginia, court attempted to find Virginia law on setoff); *United States v. Norton*, 717 F.2d at 772 (debtor appeared to be a Pennsylvania resident, therefore court looked to Pennsylvania law for definition of setoff).

Upon review of the case law, neither the parties nor the Court has located setoff criteria under Florida state law. However, in *In re Waco Oil Co., Inc.*, 137 B.R. 544, 546 (Bankr.M.D.Fla.

1992), the Bankruptcy Court for the Middle District of Florida applied the "widely accepted test for determining whether a setoff has occured." Pursuant to this test, applicable in New York as well, the Court must find: (1) a decision to exercise the right of setoff, (2) some action accomplishing the setoff, and (3) a record evidencing that the right of setoff has been exercised. *See also United States v. Bell Credit Union*, 860 F.2d 365, 369 (10th Cir.1988); *Sisk v. Saugus Bank. and Trust Co. (In re Saugus Gen. Hosp.)*, 698 F.2d 42, 47 (1st Cir.1983); *Baker v. National City Bank of Cleveland*, 511 F.2d 1016, 1018 (6th Cir.1975); *Clarkson Co., Ltd. v. Shaheen*, 533 F.Supp. 905, 925 (S.D.N.Y.1982).